# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00345-CR

**Leonardo Martinez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
### NO. 3041030, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

## O P I N I O N

A jury found appellant Leonardo Martinez guilty of the offenses of aggravated sexual assault of a child, indecency with a child by contact, and indecency with a child by exposure. *See* Tex. Pen. Code Ann. §§ 21.11 (indecency with a child), 22.021(a)(1)(B) (aggravated sexual assault of a child) (West 2003 & Supp. 2005). Martinez argues that the court's charge permitted the jury to convict him of each offense with less than a unanimous verdict and that this error requires reversal. Martinez also asserts that his right against double jeopardy was violated and that the district court erred in excluding testimony that the victim may have been molested by an alternative perpetrator. We will affirm the judgment of the district court.

## BACKGROUND

The jury heard evidence that on March 26, 2004, eight-year-old L.Z. told her mother that Martinez had sexually abused her. Martinez is the husband of L.Z.'s cousin, Rosie Prado. L.Z.

testified that the abuse happened on more than one occasion when she stayed overnight at her cousin's apartment. L.Z. testified that she slept on the floor in her cousin's room, and that she would sometimes wake up in the middle of the night with her panties pulled down and Martinez doing "bad things" to her. L.Z. testified that sometimes Martinez would penetrate her anus and that, other times, Martinez would touch her genitals and her anus. Leticia Gomez, L.Z.'s mother, testified that L.Z. told her that Martinez was placing his penis "behind her" anus and that he was touching her "private part" and her anus. Gomez testified that, following L.Z.'s outcry, she called the police to report the incident.

Dr. Beth Nauert, a pediatrician and the medical director of the Child Assessment Program, a clinic that conducts medical examinations for children who are suspected of having been physically or sexually abused, interviewed L.Z. about the abuse. Nauert testified that L.Z. told her about multiple times that Martinez abused her, including a time when Martinez put his hand in L.Z.'s vagina, another time when Martinez put what was either his finger or his penis in her mouth, and another time when Martinez penetrated her anus.

Alia Alsafar, a forensic interviewer with the Center for Child Protection (formerly the Children's Advocacy Center), also interviewed L.Z. and testified about the incidents of abuse that L.Z. described to her. Alsafar testified that L.Z. told her about how Martinez "had put his thing in her back and made her touch his thing with her hand, as well as touched her middle part with his hand." When asked by the State how many times these incidents occurred, Alsafar replied, "She didn't indicate the exact amount of times, but did tell me it happened a lot, or more than once."

2

On June 14, 2004, the State indicted Martinez on one count of aggravated sexual assault of a child, one count of indecency with a child by contact, and one count of indecency with a child by exposure. Count one, alleging aggravated sexual assault, contained two paragraphs alleging that Martinez, on or about January 1, 2004,

> did then and there knowingly and intentionally cause the penetration of the anus of [L.Z.], a child younger than 14 years of age and not his spouse, by the sexual organ of the said Leonardo Martinez,

> did then and there knowingly and intentionally cause the anus of [L.Z.], a child younger than 14 years of age and not his spouse to contact the sexual organ of the said Leonardo Martinez.

Count two, alleging indecency with a child by contact, contained three paragraphs alleging that Martinez, on or about January 1, 2004,

> did then and there intentionally and knowingly engage in sexual contact with [L.Z.], a child younger than 17 years of age and not the spouse of the said Leonardo Martinez, by then and there touching the anus of the said [L.Z.] with the intent to arouse and gratify the sexual desire of said Leonardo Martinez,

> did then and there intentionally and knowingly engage in sexual contact with [L.Z.], a child younger than 17 years of age and not the spouse of the said Leonardo Martinez, by then and there touching the genitals of the said [L.Z.] with the intent to arouse and gratify the sexual desire of said Leonardo Martinez,

> did then and there, with the intent to arouse and gratify his sexual desire, knowingly and intentionally engage in sexual contact by causing [L.Z.], a child younger than 17 years of age and not the spouse of the said Leonardo Martinez, to touch the genitals of the said Leonardo Martinez.

Count three, alleging indecency with a child by exposure, contained three paragraphs alleging that Martinez, on or about January 1, 2004,

3

did then and there with the intent to arouse and gratify the sexual desire of said Leonardo Martinez, intentionally and knowingly expose to [L.Z.], a child younger than 17 years of age and not the spouse of the said Leonardo Martinez, any part of the genitals of the said Leonardo Martinez, the said Leonardo Martinez then and there knowing that the said [L.Z.] was present,

did then and there with the intent to arouse and gratify the sexual desire of said Leonardo Martinez, knowingly and intentionally cause [L.Z.], a child younger than 17 years and not the spouse of the said Leonardo Martinez, to expose her anus,

did then and there with the intent to arouse and gratify the sexual desire of said Leonardo Martinez, knowingly and intentionally cause [L.Z.], a child younger than 17 years and not the spouse of the said Leonardo Martinez, to expose any part of her genitals.

Martinez pleaded not guilty to each offense. During trial, he vigorously denied abusing L.Z. in any way. On direct examination, he testified:

Q: Sir, did you molest that girl, [L.Z.], in any way?

A: No, sir.

On cross-examination, Martinez stated that he "never touched her" and repeatedly denied both contacting and penetrating L.Z.:

Q: Isn't it true, Mr. Martinez, that you put your penis in [L.Z's] anus on numerous occasions?

A: It's not true.

Q: Isn't it true you touched her on her vagina with your hand on repeated occasions?

A: Absolutely no way, ma'am.

Q: Isn't it true you made her touch your penis?

4

A:  Of course not, ma'am.

Q:  And isn't it true that you exposed [L.Z.'s] genitals and your own genitals in her presence?

A:  Of course not, ma'am.

In addition to denying the allegations, Martinez's trial strategy apparently included suggesting that the complainant's brother may have been the actual perpetrator. However, the district court did not allow any testimony to that effect, so the jury heard no evidence implicating the victim's brother in the crimes.

The jury found Martinez guilty on all three counts of the indictment, and punishment was assessed at fifty-seven years' confinement for count one, twenty years' confinement for count two, and twenty years' confinement for count three. This appeal followed.

## DISCUSSION

In three issues on appeal, Martinez contends that: (1) the charge permitted the jury to convict him of each offense with less than a unanimous verdict; (2) the multiple convictions violated his right against double jeopardy; and (3) the trial court erred in excluding evidence that the complainant may have been abused by her brother.

**Jury unanimity**

In his first issue on appeal, Martinez contends that the charge of the court permitted the jury to convict him of each offense with less than a unanimous verdict and that this error requires reversal. The Texas Constitution requires a unanimous verdict in felony criminal cases. Tex. Const.

5

art. V, § 13; Tex. Code Crim. Proc. Ann. art. 36.29(a) (West Supp. 2005). Allowing a jury to choose from several separate acts, each of which is a violation of a specific statute, without requiring the jury to agree on which act was committed violates the unanimity requirement. *Ngo v. State*, 175 S.W.3d 738, 747-48 (Tex. Crim. App. 2005); *Francis v. State*, 36 S.W.3d 121, 124-25 (Tex. Crim. App. 2000). However, allowing a jury to choose between alternative theories of how an offense was committed does not run afoul of the unanimous-verdict requirement. *Martinez v. State*, 129 S.W.3d 101, 103 (Tex. Crim. App. 2004); *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991). If an indictment alleges differing means of committing an offense, a trial court does not err by charging the jury in the disjunctive. *Jones v. State*, 184 S.W.3d 915, 922 n.6 (Tex. App.—Austin 2006, no pet.).

In analyzing a jury-charge issue, the reviewing court first decides whether error exists. *Ngo*, 175 S.W.3d at 743. Then, if error exists, the court analyzes that error for harm. *Id*.

### Whether the charge was erroneous

The State concedes that the paragraphs of the court's charge pertaining to the offenses of indecency with a child by contact and indecency with a child by exposure violate the requirement of jury unanimity. However, the State disputes whether there is error in the paragraph of the court's charge regarding the remaining offense, aggravated sexual assault of a child.

The court's charge to the jury read, in relevant part:

> [I]f you believe from the evidence beyond a reasonable doubt that the defendant, Leonardo Martinez, on or about the 1st day of January, 2004, in the County of Travis, and State of Texas, did then and there knowingly or intentionally cause the **penetration** of the anus of [L.Z.], a child younger than 14 years of age and not his

6

spouse, by the sexual organ of the said Leonardo Martinez, **or** if you believe from the evidence beyond a reasonable doubt that the defendant, Leonardo Martinez, did then and there knowingly or intentionally cause the anus of [L.Z.], a child younger than 14 years of age and not his spouse, to **contact** the sexual organ of the said Leonardo Martinez, you will find the defendant guilty of the offense of Aggravated Sexual Assault of a Child . . . .

(Emphasis added).

Martinez argues that the instruction allowed the jury to return a non-unanimous verdict. According to Martinez, penetration and contact are separate and distinct acts. He contends that it is possible that only some of the jurors may have believed beyond a reasonable doubt that he was guilty of penetration, while other jurors may have believed beyond a reasonable doubt that Martinez was guilty of contact. Therefore, Martinez reasons, the jury could have found Martinez guilty of aggravated sexual assault without agreeing on the specific act that he committed.

Aggravated sexual assault is defined in section 22.021 of the penal code:

(a) A person commits an offense:

    (1) if the person:

    . . . .

        (B) intentionally or knowingly:

           (i) causes the penetration of the anus or female sexual organ of a child by any means;

           (ii) causes the penetration of the mouth of a child by the sexual organ of the actor;

           (iii) causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor; or

> (iv) causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor; and

. . . .

(2) if:

. . . .

> (B) the victim is younger than 14 years of age.

Tex. Pen. Code Ann. § 22.021.

In *Vick v. State*, 991 S.W.2d 830 (Tex. Crim. App. 1999), the court of criminal appeals explained that:

> Article 22.021 is a conduct-oriented offense in which the legislature criminalized very specific conduct of several different types. Also, the statute expressly and impliedly separates the sections by "or," which is some indication that any one of the proscribed conduct provisions constitutes an offense. A more compelling demonstration of legislative intent is reflected in the specific conduct prohibited in the four sections applicable to this case. Section (i) prohibits penetration of a male or female child's anus or the sexual organ of a female child. The focus is on penetration of the child's genital area. Somewhat related is section (ii), which prohibits penetration of the child's mouth by the defendant's sexual organ. Both section (i) and section (ii) concern penetration of the child, one focusing on the genital area, and the other on the mouth. In contrast, sections (iii) and (iv) address penetration and contact of another in a sexual fashion, by the sexual organ or anus of the child. The statute criminalizes many types of sexually assaultive conduct with a child. Yet, each section usually entails different and separate acts to commit the various, prohibited conduct. This specificity reflects the legislature's intent to separately and distinctly criminalize any act which constitutes the proscribed conduct. An offense is complete when a person commits any one of the proscribed acts. In sum, Art. 22.021 is a conduct-oriented statute; it uses the conjunctive "or" to distinguish and separate different conduct; and its various sections specifically define sexual conduct in ways that usually require different and distinct acts to commit. These considerations lead us to conclude that the Legislature intended that each separately described conduct constitutes a separate statutory offense.

*Id*. at 832-33. Our reading of *Vick* leads us to conclude that, on the record in this case, penetrating the child's anus and contacting the child's anus must be considered separate and distinct offenses.

The State argues that both penetration and contact resulted from the same incident, and that in order for any juror to find that Martinez penetrated the victim's anus, that juror must have necessarily found that Martinez also contacted the victim's anus. In other words, before Martinez could penetrate the victim, he must have first contacted her and, therefore, the offense of contact was subsumed in the offense of penetration.[1] *See Barnes v. State*, 165 S.W.3d 75, 88 (Tex. App.—Austin

---

[1] The State also argues that Martinez is confusing the issue of jury unanimity with the issue of election. We disagree. When an indictment charges a single offense and the evidence shows that two or more acts fulfill all the elements of the charged offense, the State is required to elect which act it will rely upon to secure a conviction, provided that the accused makes a motion for election. *See Scoggan v. State*, 799 S.W.2d 679, 680 n.3 (Tex. Crim. App. 1990); *Moore v. State*, 143 S.W.3d 305, 312 (Tex. App.—Waco 2004, pet. ref'd). The rule regarding election is not applicable in this case, however, because we ultimately conclude that the indictment alleged multiple offenses. *See Brantley v. State*, 48 S.W.3d 318, 322 n. 1 (Tex. App.—Waco 2001, pet. ref'd).

We also note that even if Martinez should have requested an election in this case, our analysis of the jury unanimity issue would not change. As the court observed in *Ngo*:

> A request for an election, however, is not a prerequisite for implementing Texas' constitutional and statutory requirement of jury unanimity. An election simply limits the number of specific offenses that the jury may consider during its deliberations. Appellant's failure to request an election means that the jury may be instructed on several different criminal acts in the disjunctive, but it will still be instructed that it must unanimously agree on one specific criminal act. As the State correctly points out, one of the purposes of requiring an election is "to ensure unanimous verdicts, that is, all of the jurors agreeing that one specific incident, which constituted the offense charged in the indictment, occurred[.]" But the converse is not true. The failure to request an election does not eliminate a defendant's right to a unanimous verdict.

*Ngo v. State*, 175 S.W.3d 738, 748 (Tex. Crim. App. 2005) (internal citations omitted).

2005, no pet.); *Hendrix v. State*, 150 S.W.3d 839, 848 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).

The State's argument might have merit in a case in which there is evidence of only a single act, and that single act involves penetration. *See Patterson v. State*, 152 S.W.3d 88, 92 (Tex. Crim. App. 2004); *Hendrix*, 150 S.W.3d at 848; *see also Francis*, 36 S.W.3d at 128 (Johnson, J., concurring) ("The indictment against appellant contained one count of indecency with a child, alleging two kinds of contact on the same date. The indictment was valid on its face; if both types of contact occurred at the same time, they would comprise a single act."). In this case, however, there was evidence of more than one act involving contact, and those acts did not always involve penetration. L.Z.'s mother testified that L.Z. told her that the abuse happened "more than one time." L.Z. also testified that the abuse happened on more than one occasion, and that the abuse was "different sometimes":

Q: This happened more than one time, right?

A: Yes.

Q: Was it the same every time, or was it different sometimes?

A: Different sometimes.

Q: Okay. Sometimes did something other than the middle part being in the butt happen? You can answer yes or no to that. Do you know the answer, or are you afraid to say?

A: Can you repeat the question?

Q: Yes. Sometimes did something happen other than the middle part of [Martinez] being in the butt?

10

A: Yes.

. . . .

Q: We will go slow, okay. Did [Martinez's] hand touch any parts of [L.Z.] that it shouldn't have touched?

A: Yes.

Q: Did it touch the heart?

A: No.

Q: Did it touch [L.Z.'s] middle part?

A: Yes.

Q: And was the hand of [Martinez] moving or not moving when it touched the middle part of [L.Z.]?

A: Moving.

Q: Did the hands of [Martinez] touch the butt of [L.Z.]?

A: Yes.

Q: Was it moving or not moving?

A: It was moving.

Q: Did the hand — any part of the hand go inside of [L.Z.'s] middle part?

A: No.

Q: Did any part of the hand go inside of [L.Z.'s] butt?

A: No.

This testimony is evidence that Martinez contacted or penetrated L.Z., or did both, on separate occasions.

Alia Alsafar, a forensic interviewer with the Center for Child Protection, testified that L.Z. told her that the abuse "happened on more than one occasion," and that sometimes the abuse involved penetration:

Q: Did you ask [L.Z.] whether or not the thingy that was in her back was something that went inside or outside her body?

A: Yes.

Q: And what did she say to that?

A: She told me it went inside her back.

Alsafar also testified, however, that L.Z. indicated that on other occasions the abuse did not involve penetration:

Q: The third general area that she talked about was the defendant — or [Martinez] touching her middle part with his hand?

A: Yes.

Q: What did she specifically tell you about that?

A: She pointed to her own vagina and stated he put his whole hand on this part, or she referred to it as her middle part, inside her clothes but outside her vagina.

Other evidence of contact separate from penetration included the testimony of Dr. William Carter, a licensed psychologist, who reviewed L.Z.'s case history. Carter testified about the consistency and veracity of the details in L.Z.'s outcry. One of the statements L.Z. made in her outcry that Carter testified to was "someone touching her butt." "Touching" implies contact, and not necessarily penetration.

12

Consistent with the evidence we have reviewed, the State argued in closing—contrary to its current position on appeal—that there was evidence of more than one act: "And when [did it happen]? More than one time. She has always said it happened more than one time."

Because there was evidence of multiple acts of aggravated sexual assault in this case, some of which only involved contact and not penetration, we cannot conclude from this record that the offense of contact was subsumed in the offense of penetration. We hold that the paragraph of the court's charge instructing the jury on aggravated sexual assault was erroneous.[2] There is a "reasonable possibility" that the verdict was not unanimous—that some members of the jury convicted Martinez of the offense of penetrating the victim's anus during a particular episode while other jurors convicted him of the offense of contacting the victim's anus at another time. *See Francis v. State*, 36 S.W.3d at 125.

### Whether the error requires reversal

Having concluded that the aggravated-sexual-assault charge failed to require jury unanimity, and because the State has conceded that both indecency-with-a-child charges failed to require jury unanimity, we now address whether the charge error regarding all three offenses requires reversal of Martinez's conviction. We will address the offenses together.

The degree of harm from charge error requiring reversal depends on whether the appellant preserved the error by objection. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim.

---

[2] In accordance with *Ngo*, we emphasize that it is not error to submit the separate offenses of contact and penetration "disjunctively." Rather, the error "is in failing to instruct the jury that it must be unanimous in deciding which one (or more) of the [two] disjunctively submitted offenses it found appellant committed." *Ngo*, 175 S.W.3d at 749.

13

App. 2003). Where, as here, the appellant failed to object, we will not reverse for jury-charge error unless the record shows "egregious harm" to the defendant.[3] *Bluitt v. State*, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004); *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985). Errors that result in egregious harm are those that affect "the very basis of the case," "deprive the defendant of a valuable right," or "vitally affect a defensive theory." *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). In making an egregious harm determination, reviewing courts assess the degree of harm in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the arguments of counsel, and all other relevant information revealed by the record as a whole. *Ellison v. State*, 86 S.W.3d 226, 228 (Tex. Crim. App. 2002).

Having reviewed the entire record, we find no egregious harm. Martinez argues that there was egregious harm during the State's closing argument, when the State explained to the jury the difference between penetration and contact in the charge paragraph on aggravated sexual assault. At one point, the prosecutor stated, "If you decide yes on either one of those segments, you are going

---

[3] Martinez asserts that the charge error is a "structural error," and thus should not be subject to a harmless error analysis. We disagree. A structural error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991). The court of criminal appeals has held that structural errors are "federal constitutional errors labeled by the United States Supreme Court as such." *Johnson v. State*, 169 S.W.3d 223, 235 (Tex. Crim. App. 2005). The Supreme Court has found structural error only in a "very limited class of cases": the total deprivation of counsel at trial, lack of an impartial trial judge, the unlawful exclusion of members of the defendant's race from a grand jury, the denial of the right to self-representation at trial, the denial of the right to a public trial, and an instruction that erroneously lowers the burden of proof for conviction below the "beyond a reasonable doubt" standard. *Johnson v. United States*, 520 U.S. 461, 468-69 (1997). The court of criminal appeals has expressly held that "[j]ury charge error is not structural error and therefore must be reviewed for harm." *Trevino v. State*, 100 S.W.3d 232, 241 (Tex. Crim. App. 2003). We are bound by *Trevino* unless and until a higher court tells us otherwise.

to come back to the first verdict form, and you are going to put guilty in there, and you are going to sign it, and then you are going to go back to the third page." Then, when discussing the different offenses in the charge paragraphs on indecency with a child, the prosecutor stated, "If you find any of those to be true, then you go to the last verdict form, and you put guilty." In neither instance did the State remind the jury that it needed to reach a unanimous verdict on whichever offense it believed Martinez to be guilty.

We do not believe the prosecutor's comments rise to the level of egregious harm presented in *Ngo*. In *Ngo*, the jury was repeatedly told, by both the prosecutor and the judge, that it need not reach a unanimous verdict. *See Ngo* at 750-51. Here, the jury was never explicitly told that its verdict need not be unanimous and, in fact, was instructed in the last paragraph of the charge that its verdict "must be unanimous." *See Hutch*, 922 S.W.2d at 170 (absent contrary evidence, court presumes jury followed law provided by charge).

The state of the evidence, including contested issues, also persuades us that the charge error did not cause egregious harm. The State introduced sufficient evidence supporting each of the separate acts in the charge. This evidence, which is not contested by Martinez on appeal, included extensive testimony by the complainant, her mother, and two witnesses who interviewed the complainant and testified in great detail about the alleged abuse.

Furthermore, during trial Martinez did not argue that he was guilty of some of the acts alleged but not others. Rather, Martinez's defensive theory was that he did not commit *any* of the acts the State charged him with. He did not attempt to draw a distinction between contact and penetration in the aggravated sexual assault allegation, nor did he attempt to draw distinctions

15

between the separate acts in the indecency allegations. Martinez's trial strategy left the jury with an all-or-nothing decision when evaluating each count in the charge—for example, either he was guilty of aggravated sexual assault, or he was not. The charge error would not have impacted the jury's resolution of this issue.

Finally, unlike in *Ngo*, where two of the offenses were mutually exclusive, *see Ngo*, 175 S.W.3d at 751-52 (defendant could not have committed both original theft of credit card *and* received same credit card from someone else who had stolen it), none of the acts in this case were mutually exclusive. For example, it was possible for Martinez to both contact and penetrate the victim on separate occasions and, in fact, the State presented sufficient evidence of each act.

Unlike the charge error in *Ngo*, the charge error in this case did not go to "the very basis of the case," "deprive the defendant of a valuable right," or "vitally affect a defensive theory" to a degree that Texas courts heretofore have considered egregious harm. *See Ngo*, 175 S.W.3d at 750. We conclude, therefore, that Martinez did not suffer egregious harm as a result of the charge error. We overrule his first issue.

**Double jeopardy**

In his second issue, Martinez contends that the jury could have found that Martinez committed both aggravated sexual assault by contact and indecency with a child by contact, and that this would constitute multiple punishment in violation of the Double Jeopardy Clause. *See Illinois v. Vitale,* 447 U.S. 410, 415 (1980); *Cervantes v. State,* 815 S.W.2d 569, 572 (Tex. Crim. App. 1991); *Barnes*, 165 S.W.3d at 87. We first note that Martinez did not make a double jeopardy objection at trial. Therefore, the face of the trial record must clearly show a double jeopardy

16

violation before we may address this issue. *See Langs v. State*, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006) (citing *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000)). The court of criminal appeals has held that:

> [W]hen separate theories for an offense are issued to the jury disjunctively, a double jeopardy violation is not clearly apparent on the face of the record if one of the theories charged would not constitute a double jeopardy violation and there is sufficient evidence to support that valid theory. The fact that the jury's verdict could have relied on a theory that would violate the Double Jeopardy Clause, is not sufficient to show a constitutional violation clearly apparent on the face of the record.

*Id*.

In this case, it is not clearly apparent on the face of the record that there was a double jeopardy violation. L.Z. testified at trial to multiple instances of sexual abuse, and not all instances involved the same conduct. Specifically, L.Z. testified that Martinez: (1) penetrated her anus; (2) touched her anus; (3) touched her vagina; (4) made her touch his penis; (4) placed his penis in her mouth; and (5) exposed his penis to her. Because there is evidence of each of these separate acts, valid theories for the multiple convictions exist that do not violate double jeopardy. For example, if the jury found that Martinez contacted L.Z.'s anus under the aggravated-sexual-assault charge, the jury could have separately found that Martinez contacted L.Z.'s vagina under the indecency-by-contact charge.

In order to prevail on a double jeopardy claim, the evidence must show that the two offenses at issue necessarily arose from "one act which could be subject to two different interpretations." *Ochoa v. State*, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998); *Martinez v. State,* 161 S.W.3d 697, 705 (Tex. App.—Austin 2005, pet. granted). Martinez has not demonstrated that

17

his conviction of indecency with a child by contact was based on the same conduct underlying his conviction for aggravated sexual assault of a child. *Hutchins v. State*, 992 S.W.2d 629, 633 (Tex. App.—Austin 1999, pet. ref'd). Therefore, he has failed to show a double jeopardy violation. We overrule Martinez's second issue.

**Alternative perpetrator evidence**

In his third issue on appeal, Martinez asserts that the district court's exclusion of "alternative perpetrator evidence" violated his right to present a complete defense and his right to confrontation.[4] Martinez attempted to present evidence that L.Z.'s brother, F.Z., had sexually molested her. Martinez's attorney informed the district court that this evidence was necessary to: (1) present his theory that L.Z.'s brother was the actual perpetrator; and (2) discredit the testimony of L.Z.'s mother by alleging that she was testifying against Martinez in order to protect her son from prosecution. The district court sustained the State's objection to this evidence. When the court made its final ruling on this issue, Martinez's attorney noted his objection.[5]

---

[4] Persons accused of crimes are guaranteed a meaningful opportunity to present a complete defense by the Sixth and Fourteenth Amendments to the United States Constitution. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). These same amendments also guarantee a criminal defendant the right to confront the witnesses against him. *Shelby v. State*, 819 S.W.2d 544, 546 (Tex. Crim. App. 1991).

[5] We conclude that Martinez preserved error on this issue by: (1) informing the trial court of the substance of the evidence sought to be admitted; and (2) informing the trial court of the legal grounds for the admission of the evidence. *See Willover v. State*, 70 S.W.3d 841, 845 n. 4 (Tex. Crim. App. 2002) ("Whichever party complains on appeal about the trial judge's action must, at the earliest opportunity, have done everything necessary to bring to the judge's attention the evidence rule in question and its precise and proper application to the evidence in question.").

Evidentiary rulings rarely rise to the level of denying the fundamental constitutional right to present a meaningful defense. *Potier v. State*, 68 S.W.3d 657, 659 (Tex. Crim. App. 2002). A trial court's ruling excluding evidence may rise to the level of a constitutional violation if the ruling excludes otherwise relevant and reliable evidence which "forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App. 2002). Regarding "alternative perpetrator evidence," although a defendant has the right to attempt to establish his innocence by showing that someone else committed the crime, he still must show that his proffered evidence regarding the alleged alternative perpetrator is sufficient, on its own or in combination with other evidence in the record, to show a nexus between the crime charged and the alleged "alternative perpetrator." *Id*.

Even though evidentiary rulings are ordinarily reviewed for an abuse of discretion, *see Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000), we review constitutional issues *de novo*. *See Lilly v. Virginia*, 527 U.S. 116, 137 (1999); *Campos v. State*, 186 S.W.3d 93, 96 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Davis v. State*, 169 S.W.3d 660, 665 (Tex. App.—Austin 2005, pet. granted); *Wilson v. State*, 151 S.W.3d 694, 697 (Tex. App.—Fort Worth 2004, pet. ref'd); *Muttoni v. State*, 25 S.W.3d 300, 304 (Tex. App.—Austin 2000, no pet.). *But see Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001) (applying abuse-of-discretion standard of review to case in which right to present complete defense was implicated).

Based on our review of the record, Martinez has failed to demonstrate the required nexus between L.Z.'s brother and the crime charged. At the conclusion of L.Z.'s testimony, Martinez's attorney examined her on voir dire about her brother. The attorney first asked L.Z. if her

19

brother ever did any "bad things" to her.  L.Z. replied, "No."  The attorney then asked about a time

when L.Z. was younger and she would "play doctor" with her older brother.  L.Z. testified that her

brother would play the doctor and L.Z. would play the patient.  L.Z. testified that, one time, her

brother placed a play stethoscope on her chest to check on her heart.  L.Z. testified that nothing

inappropriate happened:

> Q:  So when you were playing doctor, did your brother ever look at any other parts
> of your body that were injured?
>
> A:  No.
>
> Q:  While you are playing doctor any other time, did your brother ever touch you in
> any way that was a little bit wrong?
>
> A:  No.

L.Z. also testified that her brother tried to hug her, but that he did nothing else to her:

> Q:  And when he hugged you, did he rub your head?
>
> A:  (Nods negatively).
>
> Q:  Did he rub your ear?
>
> A:  No.
>
> Q:  Did he tickle you?
>
> A:  (Nods negatively).
>
> Q:  Did he rub your chest somehow?
>
> A:  He just hugged me.  That's all.
>
> Q:  Was it for a long time or a little time?

A: A little time.

Q: Did he say anything when he hugged you?

A: No.

Leticia Gomez, L.Z.'s mother, was also examined on voir dire about this incident. Gomez testified that the year before L.Z. made the allegations against Martinez, she was concerned that her son was inappropriately touching L.Z. Gomez testified that she was concerned because her older daughter, N.Z., told her that F.Z. was touching L.Z. during their doctor-patient play sessions. However, Gomez also testified that she no longer believes anything inappropriate happened between her children.

Martinez's attorney also examined on voir dire Belen Prado, L.Z.'s aunt, about the incident. Prado testified:

Q: Just so I'm clear, did [L.Z.'s mother] ever indicate to you that she thought that her son was the perpetrator of this sexual abuse against [L.Z.] that occurred last year, or was that a separate issue?

A: That was a separate issue. That is another thing that happened three years [ago], and that happened in Arlington, Texas.

Q: So to be clear, this does not have — you are not saying that you believe that Leonardo Martinez is innocent of these charges?

A: That's right.

In ruling that evidence about the incident between L.Z. and her brother would not be admitted, the district court stated:

21

Well, I don't find that incident to be relevant. It is not in the same time and place of this incident, and it is not describing anything inappropriate that this Court can see. It is only hugging her from behind, and the sister didn't think that was appropriate. There was no criminal conduct described, no intimate behavior described, and it has nothing to do with what we are here on.

We conclude that excluding this evidence did not violate Martinez's right to present a complete defense. The proffered evidence fails to establish a connection between L.Z.'s brother and the abuse L.Z. alleged. Any suggestion that L.Z.'s brother was an alternative perpetrator is "both meager and speculative." *See Wiley*, 74 S.W.3d at 406. "It is not sufficient for a defendant merely to offer up unsupported speculation that another person may have done the crime. Such speculative blaming intensifies the grave risk of jury confusion, and it invites the jury to render its findings based on emotion or prejudice." *Michaelwicz v. State*, 186 S.W.3d 601, 617 (Tex. App.—Austin 2006, pet. ref'd) (quoting *United States v. McVeigh*, 153 F.3d 1166, 1191 (10th Cir. 1998)).

### Right to confrontation

Martinez also argues that excluding the evidence about L.Z.'s brother prevented him from cross-examining L.Z.'s mother about whether her testimony was biased against Martinez in an effort to protect her son from prosecution.

The Confrontation Clause of the U.S. Constitution guarantees a defendant the right to cross-examine witnesses. *Crawford v. Washington*, 541 U.S. 36, 42 (2004); *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986); *Carroll v. State*, 916 S.W.2d 494, 496-97 (Tex. Crim. App. 1996). A defendant may cross-examine a witness on any subject "reasonably calculated to expose a motive, bias[,] or interest for the witness to testify." *Carroll*, 916 S.W.2d at 497. However, the

22

trial court has considerable discretion in determining how and when bias may be proved, and what collateral evidence is material for that purpose. *Dihn Tan Ho v. State*, 171 S.W.3d 295, 304 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). The trial court has the discretion to limit the scope of cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence. *Van Arsdall*, 475 U.S. at 679; *Stults v. State*, 23 S.W.3d 198, 204 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). Courts must examine each case on an individual basis to determine whether the Confrontation Clause demands the admissibility of certain evidence. *Lopez v. State*, 18 S.W.3d 220, 225 (Tex. Crim. App. 2000). In making this determination, the court should balance the probative value of the evidence sought to be introduced against the risk its admission may entail. *Id*. at 222.

During voir dire, L.Z.'s mother testified:

Q: You sure don't want to see your son get in any trouble, do you?

A: Of course not.

Q: You would protect your son from getting into some kind of trouble, wouldn't you?

A: That's right.

This particular testimony was only relevant to the extent evidence that L.Z.'s brother may have been an alternative perpetrator was relevant. Because we have already concluded that Martinez failed to establish a nexus between L.Z.'s brother and the acts alleged, we also conclude that evidence of L.Z.'s mother's desire to protect her son is not probative of any issue relevant to the case. Admitting the testimony would risk confusing the jury about an irrelevant issue. Therefore,

excluding the testimony did not violate Martinez's right to confront and cross-examine L.Z.'s mother. We overrule Martinez's third issue.

## CONCLUSION

Having overruled all of Martinez's issues on appeal, we affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed:   June 9, 2006

Publish