COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| JOSE PEREZ, | | No. 08-10-00075-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 384th District Court |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 20090D03102) |
| | § | |

## O P I N I O N

Jose Perez was indicted on seven counts of aggravated sexual assault of a child (Counts One through Seven) and seven counts of indecency with a child (Counts Eight through Fourteen). A jury convicted him of Counts Five through Seven and Counts Eight through Fourteen. It assessed punishment at confinement in the Texas Department of Criminal Justice for a period of fifty years for each sexual assault count and a period of twenty years for each of the seven indecency counts. In a single issue for review, Appellant complains that charge error denied his constitutional right to a unanimous verdict.

**FACTUAL SUMMARY**

Appellant was charged by indictment on fourteen counts of criminal acts with respect to Lindsey Nicole Short. The seven aggravated sexual assault counts alleged identical conduct, but each alleged a different year of commission starting with Count One in 2002 and ending with Count Seven in 2008. Each count charged Appellant in three paragraphs, alleging that on or about January 1 of the corresponding year, Appellant:

[D]id then and there intentionally and knowingly cause the penetration of the **sexual**

**organ** of **LINDSEY SHORT**, a child who was then and there younger than 14 years of age, by the means of the **sexual organ** of **JOSE PEREZ,**

**PARAGRAPH B**
did then and there intentionally and knowingly cause the penetration of the **anus** of **LINDSEY SHORT**, a child who was then and there younger than 14 years of age, by the means of the **sexual organ** of **JOSE PEREZ,**

**PARAGRAPH C**
did then and there intentionally and knowingly cause the penetration of the **mouth** of **LINDSEY SHORT**, a child who was then and there younger than 14 years of age, by the means of the **sexual organ** of **JOSE PEREZ**.

Likewise, the seven indecency counts alleged the same conduct committed between 2002 and 2008.

Lindsey was born in 1997. At the time of trial, she was thirteen years old. For most of her life, Lindsey and her older brother lived with their grandmother, Alice Madrid, because their mother was a truck driver who was on the road most of the time. Appellant was Madrid's boyfriend. He lived with Lindsey at Madrid's house for the majority of Lindsey's childhood.

According to Lindsey, Appellant began molesting her in 2002 when she was five years old and in kindergarten. The abuse continued on an almost daily basis until she was in the fifth grade. Although most of the time Appellant would penetrate either her sexual organ or her mouth, "all three things" (vaginal, anal, and oral penetration) happened each year between 2002 and 2008. When she complained of the pain, Appellant would tell her to "shut up." He would also force her to perform oral sex and would ejaculate into her mouth. Lindsey took showers with Appellant at her grandmother's house when she was five years old. Appellant would say he needed to clean her private parts, but it hurt when he inserted his finger.

Lindsey told the jury she found a pornographic videotape in her brother's backpack and gave it to her grandmother, who in turn gave the tape to Appellant to throw away. Instead of disposing of the tape, Appellant forced Lindsey to watch the tape with him and told her she was "going to learn

this anyways." She witnessed vaginal, anal, and oral penetration on the video.

At trial, Lindsey identified a drawing she made "for the people there at the [Advocacy] Center." Lindsey explained that the picture depicted her, laying down, with her knees on the ground, bent over without her pants or underwear on, and Appellant "getting ready to do stuff to me." She was in that position because Appellant "told me to take off my pants and underwear so he can do some stuff to me." Lindsey also specifically described the last incidence of abuse. Appellant was not wearing any pants or underwear. He put Lindsey on the pool table at her grandmother's house and told her to remove her pants and underwear. When Lindsey resisted, Appellant pulled her off the pool table and told her to suck his penis. Again, Lindsey resisted. This time, Appellant grabbed Lindsey's head and tried to force her to perform oral sex on him but Lindsey refused to open her mouth.

According to Lindsey, incidents of abuse occurred at least "four times a week every week." She didn't tell her mother or grandmother because Appellant threatened that he would hurt her brother. Lindsey told no one until after Appellant moved out of the house.

Leticia Armendariz, a program director for Child Protective Services (CPS) and the supervisor of Lindsey's case, testified that the Department conducted a full and joint investigation with the police department. Armendariz was questioned without objection as to the process by which CPS investigates cases. Based on all the information gathered, the Department can make one of three dispositions:

> We can -- based on the information we gather we can close the case with a disposition of 'reason to believe', we found enough evidence to show that the abuse occurred. We have a disposition of an 'unable to determine', based on the evidence we can't determine that it did happen, but yet we couldn't say that it didn't happen. And we also have a determination of 'roll out', which basically determines that the abuse and negligence did not occur on this particular case or child at the time.

In this case, CPS concluded that there was reason to believe Lindsey had been sexually abused.

Joe Zimmerly, a forensic interviewer, met with Lindsey at the Advocacy Center for the Children of El Paso. During the interview, Zimmerly asked Lindsey for a drawing. The drawing was admitted into evidence as State's Exhibit 5. Zimmerly identified certain phrases which appeared on the drawing: (1) "my pants and underwear;" (2) "I'm laying down;" (3) "his bed;" (4) "the closet;" (5) "a box to put stuff in;" (6) "TV;" (7) "his shoes;" (8) "he is taking his pants and underwear off;" (9) "his pants;" (10) "walking into the kitchen;" (11) "to bathroom;" and (12) "his weights." Without telling the jury what Lindsey said, Zimmerly then confirmed that the child made an allegation of sexual abuse during the interview.

Detective Pena received the case from Child Protective Services. She believed Lindsey had been penetrated anally, orally, and vaginally over a period of seven years. While she had not personally interviewed Lindsey, she did interview Madrid and obtained a statement from her. She also observed the session between the forensic interviewer and Lindsey. After the session, she again questioned Madrid to corroborate Lindsey's statements.

The jury charge set out the law in relevant part by defining the offense of aggravated sexual assault of a child as when a person:

> Intentionally or knowingly causes the penetration of the anus or sexual organ of a child by any means or causes the penetration of the mouth of a child by the sexual organ of the actor.

The trial court also submitted specific instructions and general verdict forms for each count. The jury was charged as to the aggravated sexual assault counts at issue here as follows:

> Now if you find from the evidence beyond a reasonable doubt that on or about the 1st day of January [2006, 2007, 2008] in the county of El Paso and State of Texas, the defendant Jose Perez, did then and there intentionally or knowingly cause the ***penetration of the sexual organ*** of Lindsey Short, a child who was then and there younger than 14 years of age, by the means of the sexual organ of Jose Perez, ***or*** did

then and there intentionally or knowingly cause **the penetration of the anus** of Lindsey Short, a child who was then and there younger than 14 years of age, by the means of the sexual organ of Jose Perez, **or** did then and there intentionally or knowingly cause **the penetration of the mouth** of Lindsey Short, a child who was then and there younger than 14 years of age, by the means of the sexual organ of Jose Perez, then you will find the defendant guilty of Count [V, VI, VII], as charged in the indictment.
**(Verdict form 'B')**

Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant of Count [V, VI, VII] and say by your verdict 'not guilty'.
**(Verdict form 'A')**

[Emphasis added]. Appellant did not object to the charge.

## CHARGE ERROR

In his sole issue for review, Appellant complains that charge error precluded a unanimous jury verdict. He argues that because each count consisted of three paragraphs and was phrased in the disjunctive, the jury was allowed to return a general verdict of guilt without all twelve jurors unanimously agreeing that Appellant committed any one of the three offenses.

### Standard of Review

A unanimous jury verdict is required in all criminal cases. *Ngo v. State*, 175 S.W.3d 738, 745 (Tex.Crim.App. 2005); TEX.CONST. art. V, § 13; TEX.CODE CRIM.PROC.ANN. art. 36.29(a)(West 2006). Each juror must be convinced the defendant committed the "same, single, specific criminal act." *Ngo*, 175 S.W.3d at 745. The purpose of requiring a unanimous jury verdict is to ensure that the jury agrees on the factual elements underlying an offense, rather than merely agreeing on a violation of a statute. *Francis v. State*, 36 S.W.3d 121, 125 (Tex.Crim.App. 2000). A unanimous verdict helps ensure that each juror is convinced, beyond a reasonable doubt, that the prosecution proved each essential element of the offense. *Pizzo v. State*, 235 S.W.3d 711, 714 (Tex.Crim.App. 2007); *Jefferson v. State*, 189 S.W.3d 305, 311 (Tex.Crim.App. 2006), *cert. denied*, 549 U.S. 957,

127 S.Ct. 386, 166 L.Ed.2d 276 (2006).

We must first determine whether error exists in the charge. *Ngo*, 175 S.W.3d at 743-44. In doing so, we engage in a two-step process: (1) we examine the statutory language to determine whether the Legislature created multiple, separate offenses, or a single offense with alternative manners or means of commission; and (2) if necessary, we evaluate whether the lack of jury unanimity on the alternative means or modes of commission violates due process. *Jefferson*, 189 S.W.3d at 311. The phrase "manner or means" describes how the defendant committed the specific criminal act. *Ngo*, 175 S.W.3d at 745. Second, we determine whether sufficient harm resulted from the error to compel reversal. *Id*. The degree of harm necessary for reversal depends on whether the defendant preserved error by objection. *Id*. at 743. Where, as here, a defendant fails to object, we will not reverse unless the record shows the defendant suffered "egregious harm." *Id*. at 743-44.

### *Juror Unanimity*

Jury unanimity is not violated when the jury is disjunctively instructed on alternate means or theories of committing the same offense. *Martinez v. State*, 129 S.W.3d 101, 103 (Tex.Crim.App. 2004); *see also Jefferson*, 189 S.W.3d at 313-14 (holding due process does not require jury unanimity on a particular "act or omission" submitted as alternate means of committing the conduct element of the offense of injury to a child). However, if the charge disjunctively submits two separate offenses, and not merely alternative means of committing a single offense, it creates the possibility of a non-unanimous jury verdict and constitutes error. *See Francis*, 36 S.W.3d at 124-25.

As it applies to this case, the Penal Code defines aggravated sexual assault thusly:

(a) A person commits an offense:

    (1) if the person:

. . .

(B) intentionally or knowingly:

(I) causes the penetration of the anus or sexual organ of a child by any means; [or]

(ii) causes the penetration of the mouth of a child by the sexual organ of the actor;

.    .    .

and

(2) if:

.    .    .

(B) the victim is younger than 14 years of age.

TEX.PENAL CODE ANN. § 22.021(a)(1)(B)(I) & (ii), (a)(2)(B)(West Supp. 2006). The Court of Criminal Appeals has held that Section 22.021 criminalizes specific sexually assaultive conduct of several different types, providing for separate and distinct offenses within the statute rather than alternative means of committing one statutory offense. *See Vick v. State*, 991 S.W.2d 830, 833 (Tex.Crim.App. 1999)(the statute's structure and specificity reflects the Legislature's intent to separately criminalize any act which constitutes the proscribed conduct); *Lopez v. State*, 108 S.W.3d 293, 300 n.28 (Tex.Crim.App. 2003)(noting that under Section 22.021, each act is a separate assault against the child); *In re M.P.*, 126 S.W.3d 228, 231 (Tex.App.--San Antonio 2003, no pet.) (aggravated sexual assault can include multiple statutory offenses in one transaction). Various acts of sexual abuse committed over a period of time do not comprise a single offense; rather, a person who commits multiple assaults against the same victim is liable for separate prosecution and punishment for each separate act. *Vernon v. State*, 841 S.W.2d 407, 410 (Tex.Crim.App. 1992); *Klein v. State*, 191 S.W.3d 766, 774-75 (Tex.App.--Fort Worth 2006, pet. granted); *Martinez (Leonardo) v. State*, 212 S.W.3d 411, 418 (Tex.App.--Austin 2006, pet. ref'd).

The Court of Criminal Appeals has recently identified three situations that may result in non-

unanimous verdicts, "as to a particular incident of criminal conduct that compromises the charged offense." *Cosio v. State*, --- S.W.3d ---, 2011 WL 4436487, at *3 (Tex.Crim.App. Sept. 14, 2011, no pet.). The court articulated three variations in which non-unanimity may occur because of the failure of the charge to properly instruct the jury:

> First, non-unanimity may occur when the State presents evidence demonstrating the repetition of the same criminal conduct, but the actual results of the conduct differed. For example, if the State charges the defendant with the theft of one item and the evidence shows that the defendant had in fact stolen two of the same items, the jury's verdict may not be unanimous as to which of the two items the defendant stole. To ensure a unanimous verdict in this situation, the jury charge would have to make clear that the jury must be unanimous about which of the two items was the subject of the single theft.
>
> Second, non-unanimity may occur when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions. Each of the multiple incidents individually establishes a different offense or unit of prosecution. The judge's charge, to ensure unanimity, would need to instruct the jury that its verdict must be unanimous as to a single offense or unit of prosecution among those presented.
>
> And third and finally, non-unanimity may occur when the State charges one offense and presents evidence of an offense, committed at a different time, that violated a different provision of the same criminal statute. To ensure unanimity in this situation, the charge would need to instruct the jury that it has to be unanimous about which statutory provision, among those available based on the facts, the defendant violated.

*Cosio*, 2011 WL 4436487, at *3-4. In *Cosio*, there was evidence of more than one incident to support each count. *Cosio*, 2011 WL 4436487, at *2. The court found that, "[t]he jury could have relied on separate incidents of criminal conduct, which constituted different offenses or separate units of prosecution." *Id*. at *5. It also noted that the standard "perfunctory unanimity instruction at the end of each charge did not rectify the error," and concluded that the charges were erroneous because they allowed for the possibility that the jury rendered non-unanimous verdicts, reasoning, "[t]he jury may have believed that it had to be unanimous about the offenses, not the criminal

conduct constituting the offenses." *Id*.

Several other courts throughout Texas, including this court, have faced several similar situations and found error because the jury was improperly charged in the disjunctive. *See Francis*, 36 S.W.3d at 121, 124-25 (holding that touching the victim's breast and touching the victim's genitals were separate offenses, and it was error to submit those offenses in the disjunctive); *Cosio v. State*, 318 S.W.3d 917 (Tex.App.--Corpus Christi 2010, *pet. granted*, Dec. 8, 2010)*, rev'd on other grounds*, --- S.W.3d ---, 2011 WL 4436487, at *3 (Tex.Crim.App. Sept. 14, 2011, no pet.) (holding disjunctive jury charges improperly allowed for convictions that were not unanimous); *Ruiz v. State*, 272 S.W.3d 819, 823 (Tex.App.--Austin 2008, no pet.)(holding that the jury charge erroneously allowed for non-unanimous verdicts on all three counts of sexual assault by allowing the jury to convict if it found any one of three paragraphs to be true); *Gonzalez Soto v. State*, 267 S.W.3d 327 (Tex.App.--Corpus Christi 2008, no pet.)(holding jury charge which allowed for a conviction upon a disjunctive finding among separate offenses was erroneous); *De Los Santos v. State*, 219 S.W.3d 71, 79 (Tex.App.--San Antonio 2006, no pet.)(the trial court's disjunctive submission of separate offenses, without accompanying instruction that each juror must agree on which particular offense was committed was error); *Martinez (Jose Rolando) v. State*, 190 S.W.3d 254, 258-61 (Tex.App.--Houston [1st Dist.] 2006, pet. ref'd)(finding error in the charge where the court instructed the jury to find defendant guilty if he caused the victim's sexual organ to contact his sexual organ *or* caused the victim's anus to contact his sexual organ); *Martinez (Leonardo)*, 212 S.W.3d at 417, 420 (finding charge error where the court's charge instructed the jury to find the defendant guilty of aggravated sexual assault of a child if they found beyond a reasonable doubt that defendant penetrated the victim's anus with his sexual organ *or* caused the victim's anus to contact his sexual organ); *Tyson v. State*, 172 S.W.3d 172 (Tex.App.--Fort Worth 2005, pet. ref'd)(holding

that the trial court's submission of four counts of sexual assault to the jury in the disjunctive was improper); *Clear v. State*, 76 S.W.3d 622, 623 (Tex.App.--Corpus Christi 2002, no pet.)(finding error where the jury charge instructed the jury to find the defendant guilty of aggravated sexual assault if it found beyond a reasonable doubt that he had either penetrated the child's sexual organ with his finger or penetrated or contacted the child's sexual organ with his sexual organ). However, a jury charge is not incorrect simply because separate offenses are stated in the disjunctive. Rather, a jury charge submitted in the disjunctive is incorrect if it fails to clarify that the jury must unanimously agree on at least one statutory offense. *See Warner v. State*, 245 S.W.3d 458, 464 (Tex.CrimApp. 2008); *see also Ngo*, 175 S.W.3d at 749 ("The error here is not in submitting the three separate offenses 'in the disjunctive.' The error is in failing to instruct the jury that it must be unanimous in deciding which one (or more) of the three disjunctively submitted offenses it found appellant committed.").

The State concedes error and we agree. Having found error, we must now determine whether the error resulted in egregious harm.

### *Egregious Harm*

The failure to properly object and therefore preserve charge error is not a bar to appellate review, but instead determines the degree of harm necessary for reversal. *Warner*, 245 S.W.3d at 461. Because Appellant did not object to charge at trial, we may reverse only if the record shows the error was so egregious and created such harm that Appellant was denied a fair and impartial trial. *See id*.; *Ngo*, 175 S.W.3d at 750 n.48; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984); *De Los Santos*, 219 S.W.3d at 74, 78-79.

To determine egregious harm, we must examine the entire jury charge, the state of the evidence (including contested issues and the weight of the probative evidence), the arguments of

counsel, and any other relevant information revealed by the record of the trial as a whole. *Warner*, 245 S.W.3d at 461, *citing Almanza*, 686 S.W.2d at 171; *see also Huizar v. State*, 29 S.W.3d 249, 251 (Tex.App.--San Antonio 2000, pet. ref'd). "Errors that result in egregious harm are those that affect 'the very basis of the case,' 'deprive the defendant of a valuable right,' or 'vitally affect a defensive theory.'" *Warner*, 245 S.W.3d at 461, *citing Warner v. State*, No. 03-04-00203-CR et al., 2005 WL 2313591, at *5 (Tex.App.--Austin Sept. 22, 2005)(not designated for publication), *citing Hutch v. State*, 922 S.W.2d 166, 171 (Tex.Crim.App. 1996).

Egregious harm is difficult to prove and must be determined on a case-by-case basis. *See Nelson*, No. 08-06-00156-CR, 2008 WL 458301, at *4 (Tex.App.--El Paso, Feb. 21, 2008, )(mem. op.)(not designated for publication), *citing Ellison v. State*, 86 S.W.3d 226, 227 (Tex.Crim.App. 2002). The appellant must have suffered actual, not theoretical, harm. *Warner*, 245 S.W.3d at 461, *citing Arline v. State*, 721 S.W.2d 348, 352 (Tex.Crim.App. 1986). There is no burden of proof placed on either party to demonstrate harm. *See Warner*, 245 S.W.3d at 464.

The charge contained general instructions on unanimity, including "when you have unanimously agreed upon a verdict," and "in order to return a verdict, each juror must agree thereto." But there was no instruction on unanimity contained within the application paragraphs. Because the instructions did not explicitly inform the jurors they must unanimously agree on the specific act or acts they believed Appellant committed as to each count, they do not weigh either for or against a finding of egregious harm. *See Cosio*, 2011 WL 4436487, at *8 (after finding that the charges permitted non-unanimous verdict, the court noted that "[n]othing in the charges themselves militates against this conclusion."); *Ruiz*, 272 S.W.3d at 825 (noting that although the charge included a general instruction that the verdict must be unanimous, the instruction did not "explicitly state that the jurors must unanimously agree about the specific act or acts they believed appellant had

committed as to each count." The court went on to state, "Thus, it weighs neither for nor against a finding of egregious harm.").

The state of the evidence persuades us that the charge error did not cause egregious harm. The prosecution introduced sufficient evidence to support each of the separate acts for each count and Appellant has not challenged the sufficiency of the evidence. As we have recounted, this evidence included Lindsey's extensive testimony as to many instances of abuse occurring over several years. And as we have noted, errors that result in egregious harm are those that vitally affect a defensive theory. *See Warner*, 245 S.W.3d at 461; *Hutch*, 922 S.W.2d at 171. Appellant's trial strategy was that he did not commit any of the alleged acts. He did not distinguish between various sexual acts or contend that he had committed only some of them. *See Ruiz*, 272 S.W.3d at 826; *De Los Santos*, 219 S.W.3d at 79; and *Martinez (Leonardo)*, 212 S.W.3d at 421 (cases noting that the defendant did not differentiate between the alleged acts and argue he was only guilty of certain allegations, rather, he argued he did not commit any alleged acts). Defense counsel's arguments also indicated an attempt to undermine Lindsey's credibility, implying that the abuse never occurred at all. *Martinez (Jose Rolando)*, 190 S.W.3d at 261, and *Warner*, 2005 WL 2313591, at *7 (cases noting that the defendant's "theory of defense" was to undermine the complainant's credibility). Given the defense theory that Appellant did not commit *any* of the alleged acts, the jury was presented with an all-or-nothing decision: either Appellant was guilty of aggravated sexual assault or he wasn't. *See Martinez (Leonardo)*, 212 S.W.3d at 421. As the court stated in *Martinez (Leonardo)*, "The charge error would not have impacted the jury's resolution of this issue." *Id*.

Appellant's brief does not include a harm analysis. The State suggests, and we agree, that there was no egregious harm because the trial court did not compound the charge error. In certain cases, courts have found egregious harm where the trial court allowed the jury to hear misstatements

of the law. *See* Ngo, 175 S.W.3d at 750-51 (finding harm compounded where the prosecutor misstated the law by telling the jury, "[t]he important thing with this is that if three of you . . . feel like he stole the credit card and used it, six of you think that he received it and three of you think he presented it, it doesn't matter which one you think he did. It can be a mix and match, whichever one you believe."); *Clear*, 76 S.W.3d at 623-34 (finding egregious error where the prosecutor told the jury that four of them could believe the defendant committed penile penetration and four could believe he committed digital penetration because, "as long as [the State has] proven to each and every one of you at least one of these manners, we are entitled to a guilty verdict. You don't all have to agree on which manner we've proven it to you, as long as we've proven one of these.").

Here, neither the prosecutor nor the trial judge made comments to the jury which would tend to increase the likelihood of a non-unanimous verdict. In fact, the prosecutor advised the jury they must find unanimously that Appellant committed each and every one of the offenses alleged:

> The elements are that: The person acts with a mental state of intentionally or knowingly causing the penetration of anus or sexual organ or mouth -- or anus and sexual organ by any means; mouth, by the sexual organ of the actor, okay? What that's talking about is this defendant penetrating Lindsey's front-middle part *and* her butt *and* her mouth with his middle part. That's what that is. That's those elements for you right there. That's what the law is, okay?

> . . .

> I mean, the wording is the same from Counts I through Count VII. If you notice, the only thing that's different is 2002, 2003, 2004, 2005, 2006, 2007 and 2008, okay? It's just that represents every single year that it happened, and that's applying the law to the facts of this case. Applying the law: Do you believe that he penetrated her mouth, penetrated her middle part, *and* penetrated her butt with his penis, applying the law you had earlier. So that's what all these are.

> . . .

> You don't get to consider anything outside of the evidence that was given to you in this particular case, okay? And ***all of you have to agree on the verdict*** after you have deliberated and talked about it.

[Emphasis added].

> We are also guided in our analysis by the court's observations in *Cosio*:

> We observe that neither of the parties nor the trial judge added to the charge errors by telling the jury that it did not have to be unanimous about the specific instance of criminal conduct in rendering its verdicts. *This factor therefore does not weigh in favor of finding egregious harm*.   [Emphasis added].

*See Cosio*, 2011 WL 4436487, at *8 (internal citations omitted).  We thus conclude that the error in the charge was not so egregious such that it deprived Appellant of his constitutional right to a unanimous verdict.  For these reasons, we overrule the sole issue and affirm the judgment of the trial court.

December 15, 2011
                                                    _____
                                                    ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, J., and Chew, C.J., (Senior)

(Do Not Publish)