



## MEMORANDUM OPINION

No. 04-09-00273-CR

Todd Lane **BERZLEY**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CR-0936
Honorable Dick Alcala, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Catherine Stone, Chief Justice
Karen Angelini, Justice
Rebecca Simmons, Justice

Delivered and Filed: August 11, 2010

AFFIRMED IN PART, REVERSED AND RENDERED IN PART

A jury convicted appellant Todd Lane Berzley of one count of aggravated sexual assault and

three counts of indecency with a child by sexual contact. In his first and second issues, Berzley

argues the trial court abused its discretion in admitting the testimony of the complaining witness's

counselor. In his third issue, Berzley argues his double jeopardy rights were violated because he was

subjected to multiple punishments for the same act. We overrule Berzley's first and second issues,

and sustain his third issue. We affirm Berzley's aggravated sexual assault conviction, and reverse his indecency with a child by sexual contact convictions.

## BACKGROUND

In a nine-count indictment, Berzley was charged with three counts of aggravated sexual assault and six counts of indecency with a child by sexual contact. The complaining witness was Berzley's stepdaughter, R.W., who was nine years old at the time of the alleged offenses.

At trial, R.W. testified that in September 2007, she was living in a two-story apartment in San Antonio, Texas, with her mother and her stepfather, Berzley. On the evening of September 9, 2007, Berzley entered the upstairs bathroom while R.W. was taking a bath and used the toilet to urinate. When R.W. got out of the tub and wrapped a towel around herself, Berzley told her to bend over the sink and lift up her towel. R.W. knew what Berzley was going to do. "He was getting undressed, and he was, well, taking his dick out and sticking it in my butt." R.W. bent over the sink, and Berzley stuck his penis in her "butt." However, R.W.'s mother then came up the stairs, saw them, and Berzley pulled up his underwear. According to R.W., Berzley had done this to her before, but not since they had moved to Texas from Oregon.

R.W.'s mother testified that on the evening of September 9, 2007, she went upstairs to let Berzley and R.W. know she was going out to the laundry room to check on a load of clothes. She then saw Berzley in the bathroom with a partial erection pulling up his underwear and R.W. standing in front of the bathroom sink, pulling up a towel and wrapping it around herself.

Additionally, Laurie Charles, a forensic nurse examiner at Christus Santa Rosa Children's Hospital, testified. Charles met R.W. and her mother when they came to the hospital for a sexual

assault examination on September 11, 2007. Charles spoke to R.W. about the September 9, 2007, incident involving Berzley and conducted a sexual assault examination of R.W. Charles took notes during her conversation with R.W. At trial, Charles read from the notes she had made during this conversation. According to these notes, R.W. described the September 9, 2007, incident as follows: Berzley "pushed me over the sink, then he stuck something in my bottom." When Charles asked R.W. "what bottom" she was talking about, R.W. said her "front bottom" and pointed to her genitals.

Finally, expert witness Julie McLaughlin, a family counselor, testified. According to McLaughlin's testimony, R.W. came to her for counseling about five months after the September 9, 2007, incident, and by the time of trial, R.W. had attended approximately twenty counseling sessions.

The jury convicted Berzley of one count of aggravated sexual assault, and three counts of indecency with a child by sexual contact. Punishment was assessed at thirty-five years imprisonment for aggravated sexual assault and twenty years imprisonment for each count of indecency with a child. This appeal followed.

## RULE 401 OBJECTION TO MCLAUGHLIN'S TESTIMONY

In his first issue, Berzley argues the trial court abused its discretion in overruling his Rule 401 objection to McLaughlin's testimony. Berzley argues McLaughlin's testimony was not relevant to any issue related to the charges in the indictment. Berzley points out that R.W.'s counseling sessions took place five months after the alleged offenses took place. Berzley also argues the evidence was victim impact testimony which is generally irrelevant until the punishment phase of trial. The State counters that McLaughlin's testimony was relevant and admissible because it (1)

showed R.W. consistently described the incident giving rise to the indictment, (2) demonstrated R.W. exhibited characteristics common to sexual abuse victims, and (3) rebutted the defensive theory that R.W. had lied about the allegations against Berzley and that R.W.'s mother had manipulated her into making these allegations. The State also argues Berzley waived his complaint about victim impact evidence by failing to make a specific objection at trial.

In order to preserve an issue for appellate review, a timely and specific objection is required. *Layton v. State*, 280 S.W.3d 235, 239-40 (Tex. Crim. App. 2009) (citing TEX. R. APP. P. 33.1(a)(1)(A); TEX. R. EVID. 103(a)(1)). A specific objection is necessary to inform the trial judge of the issue and the basis of the objection, and to allow the judge a chance to rule on the issue at hand. *Id*. Here, the record shows Berzley's counsel objected to McLaughlin's testimony under Texas Rules of Evidence 401 and 403, but did not object to McLaughlin's testimony on the basis that it was victim impact evidence. Thus, to the extent Berzley argues McLaughlin's testimony was inadmissible victim impact evidence, this issue is not preserved for our review.

Generally, all relevant evidence is admissible. TEX. R. EVID. 402. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. In criminal cases, Texas courts have allowed opinion testimony concerning behavioral characteristics typically exhibited by child victims of sexual abuse. *See, e.g.*, *Cohn v. State*, 849 S.W.2d 817, 818-19 (Tex. Crim. App. 1993); *Reyes v. State*, 274 S.W.3d 724, 729-30 (Tex. App.—San Antonio 2008, pet. ref'd); *Oliver v. State*, 32 S.W.3d 300, 303 (Tex. App.—San Antonio 2000, pet. ref'd). Expert testimony that identifies certain behavioral

characteristics exhibited by sexually abused children and relates these characteristics to the complainant is admissible even if the complainant has not been impeached. *Yount v. State*, 872 S.W.2d 706, 708-09 (Tex. Crim. App. 1993).

We review a trial judge's evidentiary rulings under an abuse-of-discretion standard. *Bowley v. State*, 310 S.W.3d 431, 434 (Tex. Crim. App. 2010). We uphold a trial judge's decision to admit evidence as long as the decision was within the zone of reasonable disagreement and was correct under any theory of law applicable to the case. *Layton*, 280 S.W.3d at 240 (citing *Montgomery v. State*, 801 S.W.2d 372, 380 (Tex. Crim. App. 1990)); *Winegarner v. State*, 238 S.W.3d 787, 790 (Tex. Crim. App. 2007).

During her testimony, McLaughlin testified that R.W. had feelings of anger, sadness, and fear; that R.W. experienced nightmares pertaining to her stepfather; and that R.W. had mixed feelings toward her stepfather. R.W.'s feelings were mixed because although she loved her stepfather, she knew that what he had done to her was wrong. McLaughlin further testified that R.W. expressed anger at the unfairness of the situation. In addition, McLaughlin testified there were two reports of R.W. "acting out" sexually, and that it was common for children who had suffered sexual abuse to "act out" sexually. McLaughlin further testified that R.W. told her she was afraid to take a shower because she was sexually abused just outside of the shower. According to McLaughlin, this characteristic was common for sexual abuse victims. Next, McLaughlin testified that R.W. was worried that she possessed age-inappropriate knowledge of sex and was concerned about divulging this knowledge to her peers. Finally, McLaughlin stated R.W. had written a letter to Berzley, and she

wanted to hear back from him. According to McLaughlin, this was not unusual behavior for a sexual abuse victim, especially when the perpetrator was a family member.

Thus, McLaughlin's testimony identified some behavioral manifestations of sexual abuse and how R.W. exhibited some of these behaviors. McLaughlin's testimony was therefore relevant in the context of this case. Additionally, one defensive theory was that R.W.'s mother had misinterpreted the September 9, 2007, incident and then manipulated R.W. into making the allegations against Berzley. McLaughlin's testimony about how R.W. exhibited some of the behavioral manifestations of sexual abuse tended to make this defensive theory less probable than it would have been without this evidence. Based on this record, we conclude the trial judge's decision to admit McLaughlin's testimony over Berzley's Rule 401 objection was correct on at least one theory of law applicable to this case and within the zone of reasonable disagreement. We, therefore, overrule Berzley's first issue.

### RULE 403 OBJECTION TO MCLAUGHLIN'S TESTIMONY

In his second issue, Berzley argues the trial judge abused his discretion in overruling his Rule 403 objection to McLaughlin's testimony.

Rule 403 allows for the exclusion of otherwise relevant evidence when its probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. Thus, relevant evidence may be excluded under Rule 403 only if its probative value is substantially outweighed by the danger of unfair prejudice. *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009). A proper Rule 403 analysis includes, but is not limited to, four

factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005).

Here, Berzley argues the probative value of McLaughlin's testimony was substantially outweighed by the danger of unfair prejudice. As to the first factor in the Rule 403 analysis, Berzley argues McLaughlin's testimony was not probative of his guilt because McLaughlin did not meet R.W. until five months after the September 9, 2007, incident took place. In analyzing this factor, we note the only direct evidence of sexual abuse came from R.W., and her credibility was a key component in the State's case. McLaughlin's testimony tended to establish that R.W. had indeed experienced a traumatic event consistent with sexual abuse as shown by her fears, sadness, nightmares, and confusion about her feelings toward her stepfather. Thus, we conclude McLaughlin's testimony had probative value and its probative value was significant.

Next, as to the second factor, Berzley argues McLaughlin's testimony had the potential to impress the jury in some irrational yet indelible way because the jury was presented with "a disturbing amount of evidence about the aftereffects of the alleged offense." The second factor in a Rule 403 analysis evaluates the evidence's tendency to tempt the jury into finding guilt on grounds apart from proof of the offense charged. *Mechler*, 153 S.W.3d at 440. Here, Berzley asserts the "amount" of testimony about the effects of the sexual abuse on R.W. was "disturbing" and was therefore unfairly prejudicial. We disagree. The record in fact shows McLaughlin testified briefly about each behavioral manifestation exhibited by R.W., and spoke in general, not specific, terms. We also note the trial judge limited McLaughlin's testimony so that McLaughlin did not testify about

the content of R.W.'s nightmares in front of the jury. We, therefore, conclude McLaughlin's testimony had little potential to impress the jury in some irrational yet indelible way.

As to the third factor, the time needed to develop the evidence, Berzley contends it weighs against the admission of McLaughlin's testimony. Here, Berzley complains about McLaughlin's testimony because it came at the end of the day and lasted beyond 5:00 p.m. Yet, even Berzley acknowledges that McLaughlin's testimony, which spans about forty pages in the seven-volume reporter's record, was "not too terribly long." We are unconvinced that the time needed to develop the evidence was significant enough to weigh against the admission of McLaughlin's testimony.

As to the fourth and final factor, the State's need for McLaughlin's testimony, Berzley argues it weighs against admission of the evidence. Berzley's primary argument here is the State had no need for McLaughlin's testimony because it was cumulative of the testimony of other witnesses. Again, we disagree. Most of McLaughlin's testimony was not cumulative of other evidence. Moreover, as the State correctly argues, it needed McLaughlin's testimony because it tended to rebut the defense's theory that the abuse did not occur.

Under Rule 403, it is presumed that the probative value of relevant evidence exceeds any danger of unfair prejudice. *Hammer*, 296 S.W.3d at 568. Rule 403 envisions the exclusion of evidence only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value. *Id.* In this case, the prejudice, if any, of the evidence was slight and the probative value of the evidence was significant. Thus, the probative value of the McLaughlin's testimony was not substantially outweighed by the danger of unfair prejudice. After analyzing the appropriate factors, we conclude the trial judge did not abuse his discretion by admitting

McLaughlin's testimony over Berzley's Rule 403 objection. We, therefore, overrule Berzley's second issue.

### DOUBLE JEOPARDY

In his third issue, Berzley argues his right to be free from double jeopardy was violated when he was convicted of aggravated sexual assault and indecency with a child for the same act.

The double jeopardy clause of the Fifth Amendment, applicable to all states through the Fourteenth Amendment, protects an accused against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Evans v. State*, 299 S.W.3d 138, 140-41 (Tex. Crim. App. 2009) (citing *Brown v. Ohio*, 432 U.S. 161, 165 (1977)). With respect to the third category, multiple punishments for the same offense, the State may seek a multiple-count indictment based on violations of different statutes, even when such violations are established by a single act; however, the defendant may be convicted and sentenced for only one offense. *Id.* at 141 (citing *Ball v. United States*, 470 U.S. 856, 865 (1985)). "In order to prevail on a double jeopardy claim, the evidence must show that the two offenses at issue necessarily arose from 'one act which could be subject to two different interpretations.'" *Martinez v. State*, 212 S.W.3d 411, 422 (Tex. App.—Austin 2006, pet. ref'd) (quoting *Ochoa v. State*, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998)).

Generally, a double jeopardy claim must be raised in the trial court to preserve the error for appellate review. *Honeycutt v. State*, 82 S.W.3d 545, 547 (Tex. App.—San Antonio 2002, pet. ref'd). A double jeopardy claim may be raised for the first time on appeal when the undisputed facts show

the double jeopardy violation is clearly apparent on the face of the record and when enforcement of the usual rules of procedural default serves no legitimate state interest. *Id*. (citing *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000)). "In cases in which the trial court either knew or should have known of the jeopardy problem, no purpose is served by enforcing the state procedural rule and the defendant may assert this interest after trial." *Id*. (quoting *Beltran v. State*, 30 S.W.3d 532, 533 n. 1 (Tex. App.—San Antonio 2000, no pet.)).

To begin, we note Berzley did not make a double jeopardy objection at trial. However, we address this issue because the double jeopardy violation is apparent from the face of the record, and no legitimate state interest would be served by applying the usual rules of procedural default. *See Gonzalez*, 8 S.W.3d at 643; *Honeycutt*, 82 S.W.3d at 547.

In the present case, Count I of the indictment alleged that Berzley caused the penetration of R.W.'s anus by his sexual organ. *See* TEX. PENAL CODE ANN. § 22.021 (Vernon Supp. 2009) (aggravated sexual assault). Count V of the indictment alleged Berzley engaged in sexual contact by touching R.W.'s anus. *See* TEX. PENAL CODE ANN. § 21.11 (Vernon 2003) (indecency with a child). Count VI of the indictment alleged Berzley engaged in sexual contact by touching part of R.W.'s genitals. *See id*. Count VII of the indictment alleged Berzley engaged in sexual contact by causing R.W. to touch part of his genitals. *See id*. The State concedes that Berzley's convictions under Counts V and VII of the indictment violate Berzley's double jeopardy rights and should be vacated. Nevertheless, the State argues that Berzley's conviction under Count VI of the indictment does not violate Berzley's double jeopardy rights and, therefore, should be affirmed.

A person commits the offense of aggravated sexual assault when the person intentionally or knowingly causes the penetration of the anus or sexual organ of a child by any means, and the child is younger than fourteen years of age. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (2)(B) (Vernon Supp. 2009). A person commits the offense of indecency with a child by sexual contact if, with a child younger than seventeen years, the person engages in sexual contact with a child or causes the child to engage in sexual contact. *See* TEX. PENAL CODE ANN. § 21.11(a)(1) (Vernon 2003). Sexual contact means any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child or any touching of any part of the body of a child, including touching through clothing, with the anus, breast or any part of the genitals of a person, if committed with the intent to arouse or gratify the sexual desire of any person. *Id*. § 21.11(c).

Here, the trial evidence does not show that Berzley participated in two separate criminal acts that would independently support a conviction for aggravated sexual assault and a conviction for indecency with a child. At trial, R.W. testified that on September 9, 2007, Berzley stuck his penis in her "butt" or anus. R.W. further testified she did not remember exactly what she told Charles, the forensic nurse examiner, but that if she used the word "bottom" or "front bottom" she meant "butt." Charles testified that she spoke to R.W. two days after the incident. During this conversation, R.W. reported only that Berzley "stuck something" in her "bottom." Charles testified that when she asked R.W. "what bottom" she meant, R.W. said her "front bottom" and pointed to her genitals.

The State argues there is no double jeopardy violation here because "[d]espite R.W.'s testimony that [Berzley] only put his penis in her anus, R.W. described genital touching, if not penetration, to [Charles]. [Charles's] testimony of R.W.'s reported assault described genital

touching, not anal penetration." We disagree. Charles's testimony does not show R.W. reported genital touching separate and apart from penetration. All the evidence, including Charles's testimony, points to one act on September 9, 2007—Berzley placing something in R.W.'s "bottom." The evidence further indicates that by the term "bottom" R.W. meant either her anus or her genitals, but not both.

This case is similar to *Ochoa v. State*, where the "appellant was shown [] to have committed one act which could be subject to two different interpretations." 982 S.W.2d 904, 908 (Tex. Crim. App. 1998). In *Ochoa*, the Court of Criminal Appeals noted that the State presented evidence of only one sexual offense committed by the appellant on the date in question, and then stated, "[e]ither the jury could conclude penetration actually occurred and convicted appellant of aggravated sexual assault, or they could conclude only contact occurred with intent to arouse and gratify sexual desire and convicted appellant of the lesser included offense of indecency with a child." *Id*. In *Ochoa*, the Court of Criminal Appeals affirmed the appellate court's opinion vacating the appellant's conviction and sentence for indecency with a child. *Id*.

As in *Ochoa*, the evidence in the present case shows the two offenses at issue necessarily arose from one act that could be subject to two interpretations. Either the jury could have concluded Berzley penetrated R.W.'s anus or it could have concluded Berzely touched part of R.W.'s genitals, but not both.[1] We hold Berzley was subjected to multiple punishments for the same act in violation of the double jeopardy clause. We, therefore, sustain Berzley's third issue.

---

[1] The jury found Berzley not guilty of Count III in the indictment which alleged Berzley caused the penetration of R.W.'s sexual organ by his sexual organ.

When a defendant is convicted of two offenses in violation of the double jeopardy clause, the proper remedy is to vacate the conviction for the offense carrying the less serious punishment. *Evans*, 299 S.W.3d at 141. Here, the jury assessed punishment at thirty-five years imprisonment for aggravated sexual assault of a child, and twenty years imprisonment for each count of indecency with a child. Thus, the proper remedy in this case is to vacate the conviction under Count VI for indecency with a child. *See id*.

Because the State has conceded two of Berzley's convictions for indecency with a child must be vacated and we have concluded Berzley's remaining conviction for indecency with a child must be vacated, we vacate all three convictions for indecency with a child.

## CONCLUSION

We affirm the judgment of conviction for one count of aggravated sexual assault of a child. We reverse the judgments of conviction for three counts of indecency with a child by sexual contact and render judgments of acquittal.

Karen Angelini, Justice

DO NOT PUBLISH