**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00223-CR**
_____

**ANDY JEROME WILLIAMS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

_____

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 22-11-15755-CR**
_____

**MEMORANDUM OPINION**

A jury found appellant Andy Jerome Williams guilty of the offense of possession of a controlled substance with intent to deliver, and the trial court assessed his punishment at twenty-five years of confinement and assessed a $4,000 fine. *See* Tex. Health & Safety Code Ann. § 481.112(f). In his sole issue, Williams complains that the trial court's denial of alternative perpetrator evidence prevented him from presenting a complete defense. We affirm the trial court's judgment.

1

# BACKGROUND

The grand jury's indictment alleges that Williams "on or about November 18, 2022, . . . did then and there knowingly possess with intent to deliver a controlled substance, namely, cocaine, in an amount of 400 grams or more[.]" During the trial, Specialist Jacob Rodgers of the Montgomery County Sheriff's Office testified he is an interdiction specialist with the Montgomery County Narcotics Enforcement Team (MOCONET). Rodgers explained that to insulate themselves from the contraband, drug smugglers typically use vehicles they do not own, so the vehicle's ownership or insurance is one step away from the smuggler. On November 18, 2022, Rodgers stopped Williams, who was driving a truck towing an empty flatbed trailer that had no lights illuminating its rear license plate in violation of the Transportation Code. Rodgers initiated the traffic stop, which was recorded on his body and dash cameras, because he could not get a registration return from the state of Illinois verifying the trailer's registration. The jury viewed the recordings from Rodgers' body and dash cameras.

Williams exited the truck and tried to approach Rodgers, which Rodgers described as highly unusual, and in Rodgers' training, distancing from a vehicle shows knowledge of contraband. Williams admitted his license plate should have been illuminated. Rodgers found it strange that Williams answered unasked questions, which was a common technique of drug smugglers. Williams reported

2

that he was in Houston to pick up a truck bed, which was not ready, so he intended to pick it up on another trip. Rodgers explained that when he confronted Williams about the implausibility of his explanation about his trip from Illinois, Williams exhibited trigger behavior including redirecting. When Rodgers asked twice for consent to search the truck, Williams redirected the conversation to avoid having to refuse the search.

Williams reported that his passenger, Ajarus Jones (Jones), was his tenant in Illinois. Rodgers described Jones' demeanor as "kind of relaxed, sort of almost seemed non-plussed about this situation and was pretty open and straightforward about his possessions in the truck." Jones seemed "open and honest" and admitted which bag belonged to him and that it contained "a little bit of marijuana[.]" Rodgers testified that at that point, he had probable cause to search the truck. Jones consented to a search of his bag and directly answered questions. Rodgers requested the deployment of a K-9 unit to conduct a free-air sniff around the truck and then searched the truck, including its compartments and factory voids where items could be concealed. Williams stated there was not anything in the truck that he knew of but also stated, "'it's there[.]'"

When Rodgers checked a concealed trap behind the back seat, he observed large bricks wrapped in cellophane, which Rodgers believed to be a large volume of drugs. Rodgers and another officer questioned Williams and Jones separately.

Williams claimed a relationship with the registered owner of the truck, who was "Manny or Manuel[,]" and stated that Jones was just there because he was a tenant and friend. When Rodgers told Williams about the drugs, Williams got "dead quiet[]" and did not appear shocked but exhibited "denial and a massive change of behavior." Williams tried to create an inference that someone had put something in the truck while it was being repaired. Rodgers detained Williams, who had a large volume of cash that was consistent with what Rodgers believed was a courier fee for smuggling drugs. Rodgers also detained Jones and explained that because Jones did not have a large amount of money, his suspicion was directed toward Williams. Rodgers confiscated the drugs, which he determined to be cocaine that had an approximate value of $1.2 million in the Houston area, and arrested Williams for possession with intent to deliver a controlled substance because the volume exceeded anything connected with personal use.

Rodgers explained that Williams' arrest was based on Williams' behavior both before and after the cocaine was discovered, Williams' claimed association with the third-party owner of the truck, Williams' indication that Jones was just there at Williams' behest and assistance, and the presence of the large volume of cash on Williams' person. Rodgers arrested Jones for possession of the marijuana but not for the cocaine because of Jones' behavior during the stop, which included being open and honest about the contraband in his bag, and Rodgers did not believe that he had

4

sufficient evidence to charge Jones with possession of the cocaine. When Rodgers showed Jones the cellophane package found in the truck, Jones indicated he had a panic attack and "started screaming and shaking and, like sweating profusely." Rodgers described the difference between Williams' and Jones' demeanor as "drastic." Rodgers' subsequent search of the vehicle revealed Williams' mail, the registration, which did not match the name Williams provided as being the owner of the truck, and the truck's insurance. The truck's insurance document showed the insured was Alberto Luna (Luna). Rodgers later conducted a recorded custodial interrogation of Williams, who stated he had borrowed the truck and trailer, was a substitute driver for someone else, and was willing to make the trip. The jury viewed Williams' custodial interrogation.

On cross-examination, Rodgers agreed that a detective assigned to MOCONET told him that he had received a tip from the Drug Enforcement Administration (DEA) that a truck matching the description of the one Williams was driving might be traveling on the roadway where Rodgers stopped Williams for a traffic violation. Rodgers stated that when he interviewed Jones, Jones corroborated Williams' story that they were in Houston to pick up a truck bed but that it was not ready. Rodgers explained that Williams gave four reasons at different times why he had made the trip to Houston in a borrowed truck.

Rodgers' investigation showed the truck was registered to Jesus Moreno whom he believed was from Illinois, and the truck's insured party was Luna, who lived in Texas. Rodgers testified that he did not investigate whether there were any narcotics connections for Luna. Rodgers explained that his investigation involved only the possession of the cocaine during the interdiction. Rodgers' investigation showed that Williams had virtually no criminal history. Rodgers testified he ran Jones' criminal history, but he did not consider either Williams' or Jones' criminal history in making the arrest.

At that point during the trial, Williams claimed he had a right to present a defense and that part of his defense was the alternate perpetrator defense, which meant that someone other than Williams was responsible for the drugs. Williams argued that Jones' criminal history was relevant, because Rodgers stated he ran Jones' criminal history, which shows Jones was on felony drug probation out of Illinois when Rodgers stopped Williams. Rodgers again testified that he did not rely on anyone's criminal or drug history and that he based his entire investigation on Williams' and Jones' behavior on the side of the road during the stop to determine who had knowledge and possession of the drugs with the intent to distribute them. Rodgers had no knowledge of Williams' or Jones' criminal history during the stop. Rodgers explained that while a person's criminal history can be relevant depending

on the totality of the circumstances, cartels are moving away from smugglers with a criminal history and looking for people who can fly under the radar.

The record shows that during a bench conference outside the jury's presence, defense counsel advised the trial court that Luna was arrested for possession with intent to deliver a controlled substance, cocaine weighing at least 400 grams, in Harris County on September 7, 2023, which was almost ten months after Rodgers stopped Williams. Defense counsel argued that he should be allowed to question Officer Dillan Passarrella, who arrested Luna in Harris County, about the subject matter of Luna's arrest. Defense counsel explained that since Luna carried the insurance on the truck Williams was driving, there was a nexus between Luna and the truck with the secret compartment containing the cocaine. Defense counsel therefore contended that Luna was an alternate perpetrator, and that he had the right to present evidence that it was Luna, not Williams, who committed the offense.

The trial court found that because of the time frame, it would not allow testimony from the Houston Police Department (HPD) about Luna's arrest. The trial court found that the nexus is not there because it involved an insured of the vehicle doing similar activities one year apart, the evidence would be confusing to the jury, and its prejudicial effect would outweigh its "very slight probative value because of the one-year time frame." The trial court excluded the evidence under Rule 403. Defense counsel argued that the State's evidence showing Luna as the insured of the

truck Williams was driving linked Luna to the truck, which had a secret compartment, and gave defense counsel the right to present an alternative perpetrator defense, especially since Luna was subsequently arrested for cocaine that was found in a speaker box in a truck. Defense counsel explained that both cases involved a sophisticated way of obscuring the drugs. The trial court reiterated its ruling that the prejudicial effect outweighed the probative value due to the time frame of almost a year gap.

During the bench conference, outside the jury's presence, the trial court allowed defense counsel to ask Rodgers about Jones' criminal history, and Rodgers testified that he ran Jones' criminal history, but he did not recall the details other than what he had heard during the trial. Rodgers stated he did not consider Williams' or Jones' criminal history, and even if he had, Jones exhibited no indicators or behaviors during the stop that led him to believe Jones had knowledge of the cocaine. The trial court stated it would allow defense counsel to ask Rodgers whether, after running Jones' criminal history, he knew Jones was on felony probation at the time of the stop. The State argued that defense counsel failed to meet the threshold that there is a nexus for the purpose of an alternative perpetrator theory in a possession case because case law did not list criminal history as a factor for courts to consider as an affirmative link to a person. The trial court explained that defense counsel could not "go deeper into it," because unlawful possession of a controlled substance

8

in Illinois included "all kind of drugs." After the bench conference, Rodgers testified before the jury that after he arrested Williams, he learned that Jones was on felony probation out of Illinois at the time of Williams' arrest.

Deputy Steven McDonald, with the Montgomery County Sheriff's Office, who patrols with a K-9 unit, testified that his K-9, Diesel, performed a free-air sniff around Williams' vehicle and made an alert. McDonald testified that after he ran Diesel, Rodgers had probable cause to search Williams' vehicle, where marijuana and cocaine were found.

Paige Desantis, a forensic scientist with the Houston Crime Lab for the Department of Public Safety, analyzed one bundle of the drugs seized in Williams' case and issued a report concluding the substance contains cocaine at 999.25 grams, plus or minus .09 grams net weight. Desantis did not test the other bundles that were seized because the cutoff weight for the offense, which is the highest penalty group, falls under the greater than or equal to 400 grams in net weight, and one bundle met that amount.

Detective Johnathan Jordan with the Montgomery County Sheriff's Office, testified he is assigned to MOCONET. At the time of Williams' arrest, Jordan was assigned to the DEA and to the High Intensity Drug Trafficking Area, a federal task force. After receiving information that a specific vehicle was headed to Mongomery County, Jordan arranged to have a traffic stop conducted. Jordan explained that he

did not provide any information to protect the integrity of the investigation and to allow the deputy or patrolman to find their own reason to stop the suspect vehicle and establish probable cause for a search. After Rodgers took Williams and Jones to jail, Jordan went to the scene and had the truck towed to MOCONET, where he conducted a search and retrieved the remaining bundles behind the rear seat. The total weight of the bundles of cocaine was 17.1 kilograms.

After the State rested, defense counsel presented character witnesses to refute the State's allegation that Williams was involved in drug trafficking, possessed illicit money, and presented a rehearsed and deceptive story to Rodgers.

## ANALYSIS

In his sole issue, Williams complains that since he showed a nexus between the alternative perpetrators and the crime, the trial court violated his right to due process by denying the admission of alternative perpetrator evidence under Rule 403 of the Texas Rules of Evidence because, in the trial court's reasoning, it would be confusing to the jury. *See* U.S. CONST. amends. V, VI, XIV; Tex. R. Evid. 403. According to Williams, the trial court denied him the right to present a complete defense by not allowing him to present evidence of Luna's subsequent arrest for possession of cocaine and evidence of Jones being on felony probation for a drug offense when Williams was arrested.

10

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). A trial judge's decision on the admission of evidence will not be reversed if it lies "within the zone of reasonable disagreement." *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). "Relevant evidence" is generally admissible and is defined as evidence that has "any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Tex. R. Evid. 401. Texas Rule of Evidence 403, on the other hand, provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury[.]" *Id.* 403.

Persons accused of crimes are guaranteed a meaningful opportunity to present a complete defense by the Sixth and Fourteenth Amendments to the United States Constitution. *Crane v. Kentucky*, 476 U.S. 683, 688, 690 (1986). Erroneous evidentiary rulings rarely rise to the level of denying the fundamental constitutional right to present a meaningful defense. *Potier v. State*, 68 S.W.3d 657, 663 (Tex. Crim. App. 2002). "[T]he exclusion of a defendant's evidence will be constitutional error only if the evidence forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Id.* at 665; *see Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App. 2002). "'That [the defendant] was

11

unable . . . to present his case to the extent and in the form he desired is not prejudicial where . . . he was not prevented from presenting the substance of his defense to the jury.'" *Potier*, 68 S.W.3d at 666 (quoting *United States v. Willie*, 941 F.2d 1384, 1398-99 (10th Cir.1991)).

> The Court of Criminal Appeals has held that

> [a]lthough a defendant obviously has a right to attempt to establish his innocence by showing that someone else committed the crime, he still must show that his proffered evidence regarding the alleged alternative perpetrator is sufficient, on its own or in combination with other evidence in the record, to show a nexus between the crime charged and the alleged "alternative perpetrator."

*Wiley*, 74 S.W.3d at 406; *see Michaelwicz v. State*, 186 S.W.3d 601, 617 (Tex. App.—Austin 2006, pet. ref'd) (quoting *United States v. McVeigh*, 153 F.3d 1166, 1191 (10th Cir. 1998)). It is not sufficient if a defendant merely offers up unsupported speculation that another person may have committed the crime. *Martinez v. State*, 212 S.W.3d 411, 424 (Tex. App.—Austin 2006, pet. ref'd). Such speculation intensifies the grave risk of confusing the jury, and it invites the jury to base its findings on emotion or prejudice. *Id.*; *see also* Tex. R. Evid. 403. Accordingly, even if evidence may otherwise be relevant, before admitting the evidence of an alternative perpetrator, the trial court must weigh the probative value of otherwise relevant evidence against the "special problems" presented by alternative perpetrator evidence. *Dickson v. State*, 246 S.W.3d 733, 739-40 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (citing *Wiley*, 74 S.W.3d at 406).

12

The record shows that defense counsel made an offer of proof for the appellate record concerning the trial court's ruling preventing him from presenting HPD Officer Passarrella's testimony about Luna's Houston arrest for possession with intent to deliver cocaine. The trial court found that because of the time frame, which was almost ten months after Williams' arrest, it would not allow testimony about Luna's arrest. During the offer of proof, Passarrella testified that on September 7, 2023, he stopped Luna for traffic violations, and after establishing probable cause to search Luna's vehicle, he found over 24,000 grams of cocaine packaged in multiple bundles concealed inside a speaker box in the trunk. Passarrella stated that Luna denied knowing there was anything in the vehicle. Passarrella believed that Luna was on deferred adjudication, and the trial court took judicial notice that Luna entered a plea bargain agreement. Passarrella had no knowledge of Williams' case or the source of the cocaine he found in Luna's vehicle.

After considering Passarrella's testimony, the trial court found that Passarrella's testimony should be excluded, because although the insurance card tying Luna to the truck Williams was driving is a nexus, it is too remote of a nexus due to the time frame and other factors to allow Passarrella's testimony about Luna's arrest for possession with intent to deliver cocaine. The trial court listed the following factors: the time frame of Luna's arrest being ten-months post-arrest of Williams; Passarrella's lack of personal knowledge of a conspiracy or organized

13

criminal activity between Luna and Williams; and the admission of Luna's arrest would be confusing to the jury. Defense counsel argued that Passarrella's testimony would not confuse the jury because the defense was just responding to the State's evidence of the insurance card, which the trial court had already found was a nexus that affirmatively linked Luna to the vehicle Williams was driving. Defense counsel requested that the trial court allow him to introduce Passarrella's testimony regarding Luna's arrest to present Luna as an alternative perpetrator to the current offense. Defense counsel also argued that evidence of drug usage by both Luna and Jones is an affirmative link for an alternative perpetrator theory, and defense counsel again requested that he be allowed to introduce Jones' felony judgment for a controlled substance.

The State argued that it uses affirmative links to prove knowing possession, and the affirmative link concerning Luna is absent because he was not present during the stop and could not have been charged in the current case. The State explained that Luna's involvement in another transaction was not relevant to whether Williams possessed the cocaine with an intent to deliver. The State explained it did not introduce Luna's insurance information to affirmatively link him to the vehicle or the drugs, but for the purpose of showing that Williams' statement about the registered owner or the insured party of the vehicle was inconsistent. The State

14

maintained that it would be misleading to tie a nexus to a person for the current offense when that person was not present to commit the offense.

The trial court found that the insurance card is a nexus, but that the nexus is so remote that no rational juror could tie an insurance card to the care, custody, control, and management of the cocaine found during Williams' stop when Luna was not present at the scene.

Denial of Alternative Perpetrator Concerning Luna

During trial, the trial court excluded evidence about Luna's arrest under Rule 403 because its prejudicial effect outweighed its "very slight probative value because of the one-year time frame[]" between Williams' and Luna's arrests. After the trial court heard Passarrella's testimony during Williams' offer of proof, the trial court found that the insurance card tying Luna to the truck was too remote of a nexus due to the time frame and that the admission of Luna's arrest would confuse the jury.

It was within the trial court's discretion under Rule 403 to exclude the proffered evidence of Luna's arrest because its probative value was substantially outweighed by the danger of unfair prejudice and because it would confuse the jury. *See* Tex. R. Evid. 403. The only evidence showing a nexus between Luna and this offense was the insurance card found in the vehicle. Williams failed to demonstrate a foundation sufficient to support the alternative perpetrator defense because his proffered evidence did not show a connection between Luna, who was not present

15

at the scene, and the charged offense. *See Wiley*, 74 S.W.3d at 406. Williams does not point to any evidence showing Luna engaged in the conduct described in the indictment. Williams may not present evidence of an alternate suspect of a crime without proof that the alternate suspect committed some act directly connecting him to the charged offense. Here, Williams merely offered up unsupported speculation that Luna committed the offense, and such speculation intensifies the grave risk of confusing the jury. *See Michaelwicz*, 186 S.W.3d at 617; *Martinez*, 212 S.W.3d at 424.

We conclude that the trial court did not err by excluding the alternative perpetrator evidence concerning Luna's arrest. Because we have concluded the trial court did not err in excluding the alternative perpetrator evidence, we need not determine whether the exclusion of that evidence prevented Williams from presenting a meaningful defense. *See Garcia v. State*, 397 S.W.3d 860, 864 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (citing *Ray v. State*, 178 S.W.3d 833, 835 (Tex. Crim. App. 2005)).

Denial of Alternative Perpetrator Concerning Jones

The record shows that when the trial court allowed defense counsel to ask Rodgers about Jones' criminal history outside the jury's presence, Rodgers testified that he ran Jones' criminal history but did not recall the details other than what he heard during the trial. Rodgers stated he did not consider Williams' or Jones'

16

criminal history, and even if he had, Jones exhibited no indicators or behaviors during the stop that led him to believe Jones had knowledge of the cocaine. The trial court allowed defense counsel to ask Rodgers whether, after running Jones' criminal history, he knew Jones was on felony probation at the time of the stop. The State argued that defense counsel had failed to meet the threshold that there is a nexus for the purpose of an alternative perpetrator theory in a possession case because case law did not list criminal history as a factor for courts to consider as an affirmative link to a person. The trial court explained that defense counsel could not "go deeper into it," because unlawful possession of a controlled substance in Illinois included "all kind of drugs." After the bench conference, Rodgers agreed that after he arrested Williams, he learned that Jones was on felony probation out of Illinois at the time of Williams' arrest.

After considering defense counsel's offer of proof and request to introduce Jones' felony judgment for a controlled substance to present Jones as an alternative perpetrator, the trial court noted that it had already allowed evidence of drug use and permitted defense counsel to create an alternate perpetrator defense and show that Jones was in the vehicle with marijuana and on felony probation when the stop occurred. The trial court denied defense counsel's request to present evidence that Jones' felony probation was for possession of a controlled substance, explaining that it probably had reached out further than it should have by allowing testimony that

17

Jones was on probation as a convicted felon. Jones' 2022 Sentencing Order from Illinois for felony unlawful possession of a controlled substance showed that his probation would end in March 2024 but did not show that he had possessed cocaine.

Thus, the record shows the trial court allowed Williams to present some evidence that Jones was an alternative perpetrator and denied only Williams' request to present evidence that Jones' felony probation was for possession of a controlled substance. While Williams had a right to attempt to establish that Jones committed the charged offense, he still must show that his proffered evidence is sufficient, on its own or in combination with other evidence, to show a nexus between the charged offense and Jones. *See Wiley*, 74 S.W.3d at 406. Williams failed to show a nexus between his proffered evidence that Jones was on felony probation for a controlled substance and the charged offense. Rodgers testified that he did not consider Jones' criminal history in deciding to arrest only Williams for the charged offense. Rodgers further testified that he arrested Jones only for possession of marijuana and not for the cocaine due to Jones' behavior during the stop and because Rodgers did not believe that he had sufficient evidence to charge Jones with possession of the cocaine. Based on this record, we conclude the trial court's exclusion of evidence that Jones' felony probation was for possession of a controlled substance did not prevent Williams from presenting evidence that Jones was an alternative perpetrator or violate Williams' right to present a complete defense. Having concluded that the

trial court did not abuse its discretion by excluding the alternative perpetrator evidence concerning Luna's subsequent arrest and Jones' felony probation, we overrule Williams' sole issue and affirm the trial court's judgment.

AFFIRMED.

JAY WRIGHT
Justice

Submitted on February 3, 2026
Opinion Delivered March 25, 2026
Do Not Publish

Before Johnson, Wright and Chambers, JJ.

19